RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0283p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LUCAS ANTHONY NICHOLS,

*Defendant-Appellant*.

No. 18-6285

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:17-cr-00122-1—Thomas A. Varlan, District Judge.

Argued:  October 22, 2019

Decided and Filed:  November 21, 2019

Before:  CLAY, THAPAR, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN
TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  Matthew T. Morris, UNITED
STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:**  Jennifer
Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC.,
Knoxville, Tennessee, for Appellant.  Terra L. Bay, UNITED STATES ATTORNEY'S
OFFICE, Chattanooga, Tennessee, for Appellee.

THAPAR, J., delivered the opinion of the court in which NALBANDIAN, J., joined.
CLAY, J. (pp. 6–13), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

THAPAR, Circuit Judge.  Lucas Nichols pled guilty to receipt and possession of child pornography.  The district court then enhanced his sentence because some of his victims were "vulnerable."  U.S. Sentencing Guidelines Manual § 3A1.1(b)(1) (U.S. Sentencing Comm'n 2018).  Nichols now argues that the sentencing guidelines prohibited the use of that enhancement.  We see things differently and affirm.

In 2017, federal law enforcement executed a search warrant at Nichols's home in Knoxville, Tennessee.  During the search, agents discovered child pornography on his phone and tablet.  Nichols then confessed that he had traded child pornography on various internet platforms (like Dropbox).  He also admitted that he had sexually abused young girls on multiple occasions and sometimes documented the abuse in videos and photographs.  In the end, investigators uncovered hundreds of videos and photographs in his possession.  Many of these images depicted graphic scenes of adult men sexually abusing children as young as toddlers.

Before sentencing, the probation office prepared a presentence report, which (as relevant here) applied two sentencing enhancements.  First, it found that Nichols possessed material depicting "sadistic or masochistic conduct or other depictions of violence."  U.S.S.G. § 2G2.2(b)(4)(A).  Second, it found that his offense harmed a "vulnerable victim."  *Id.* § 3A1.1(b)(1).  Nichols objected to the latter enhancement, arguing that he *also* possessed material depicting "sexual abuse or exploitation of an infant or toddler."  *Id.* § 2G2.2(b)(4)(B). He pointed out that the commentary to § 2G2.2 provides that "[i]f subsection (b)(4)(B) applies," a court should not apply § 3A1.1(b).  *Id.* cmt. n.4.  And he noted that if § 3A1.1(b) did not apply, then his guidelines range would be 210 to 262 months rather than 262 to 327 months.  But the probation officer recommended that the district court reject this argument, explaining that she had applied an enhancement under subsection (b)(4)(A), not (b)(4)(B).

At sentencing, Nichols renewed his objection.  After hearing arguments on the issue, the district court agreed with the probation officer (and the government) that the guidelines allowed

it to enhance a sentence under both § 2G2.2(b)(4)(A) and § 3A1.1(b) so long as it did not use § 2G2.2(b)(4)(B).  And the court chose to do so given the facts of the offense.  It then sentenced Nichols to 262 months' imprisonment.  We review that sentence for an abuse of discretion. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007).

To understand this case, it helps to know a little background about the relevant guidelines provision.  Until recently, § 2G2.2(b)(4) covered only material that depicted "sadistic or masochistic conduct or other depictions of violence."  But in 2016, the Sentencing Commission amended that provision to include material that depicted "sexual abuse or exploitation of an infant or toddler."  It did so to resolve a circuit split over whether the "vulnerable victim" enhancement in § 3A1.1(b) applied to victims who were vulnerable only because they were very young (*i.e.*, infants or toddlers).  Rather than amend § 3A1.1(b), though, the Commission amended § 2G2.2(b)(4) to cover infants and toddlers.  *See generally* U.S.S.G. supp. to app. C, amend. 801, at 133–35.  The new provision states:  "If the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence; or (B) sexual abuse or exploitation of an infant or toddler, increase by 4 levels."  U.S.S.G. § 2G2.2(b)(4).  The Commission also added commentary that instructs:  "If subsection (b)(4)(b) applies, do not apply § 3A1.1(b)." *Id.* cmt. n.4.  The question here is whether that commentary bars the application of § 3A1.1(b) to Nichols.

By its plain terms, the commentary has no relevance to this case.  The district court enhanced Nichols's sentence under subsection (b)(4)(A), not (b)(4)(B).  The court applied the former subsection because Nichols had a video of a ten-year-old girl "held in place by her hair while an adult male vaginally penetrated her" and a picture of a "blindfolded teenage female performing oral sex on an adult male."  R. 42, Pg. ID 218, 220.  That material clearly depicts "sadistic" conduct. *See United States v. Corp*, 668 F.3d 379, 390 (6th Cir. 2012).  And because the district court applied an enhancement under subsection (b)(4)(A), not (b)(4)(B), it could also apply an enhancement under § 3A1.1(b).  In short, the court simply followed the text of the guidelines.

Even so, Nichols argues that subsection (b)(4)(B) "applies" to his case.  To begin with, he says that a court must apply any appropriate enhancement. *See* U.S.S.G. § 1B1.1(a)(2); *United*

*States v. Christian*, 804 F.3d 819, 822 (6th Cir. 2015). He thus reasons that both subsections apply. But the guidelines explain that enhancements like § 2G2.2(b)(4) are listed in the "alternative" and that a court should use only the one that "best describes the conduct." U.S.S.G. § 1B1.1 cmt. n.4(A). And where multiple "appear equally applicable," a court should use only the enhancement that "results in the greater offense level." *Id.* cmt. n.5. That is exactly what the district court did here. After all, the court found that Nichols possessed images depicting sadistic conduct as well as images depicting the sexual abuse of toddlers. *See* Fed. R. Crim. P. 32(i)(3)(A).[1] And Nichols doesn't contest that finding on appeal.

Nor did the district court need to survey the underlying images to determine whether Nichols possessed more images depicting sadistic conduct than depicting the sexual abuse of toddlers. Take the example of "equally applicable" provisions given by the guidelines: discharging or brandishing a firearm. U.S.S.G. § 1B1.1 cmt. n.5 (citing U.S.S.G. § 2A2.2(b)(2)). If a defendant both discharged and brandished a firearm during a crime, we wouldn't ask whether he spent more time doing one or the other. Rather, we would say (as the guidelines do) that the enhancements "appear equally applicable." *Cf. United States v. Cole*, 359 F.3d 420, 426 (6th Cir. 2004); *United States v. Talladino*, 38 F.3d 1255, 1262 (1st Cir. 1994) ("When the same set of facts implicates two different adjustment provisions, . . . the guidelines ordinarily do not require a sentencing court to embrace the lesser of the two equally applicable adjustments."). So even though the district court did not examine the underlying images, it properly applied an enhancement under § 2G2.2(b)(4)(A), since that resulted in an additional enhancement under § 3A1.1(b).

Nichols also points to the purpose of the sentencing guidelines and the Sentencing Commission's "intent." But both these points cut against his reading. To see why, imagine two defendants. The first possesses a video of an adult sexually abusing a ten-year-old in a

---

[1]Of course, if Nichols had objected on this point, the district court would have had to review the underlying evidence rather than accept the findings made in the presentence report. *See* Fed. R. Crim. P. 32(i)(3)(B). But in some cases, defendants may prefer that the sentencing judge *not* review the evidence for fear that the it will lead the judge to impose a harsher sentence. At oral argument, Nichols agreed that he did not object to the factual findings made in the presentence report. And probably for good reason based on our review of the report. In any case, the Federal Rules of Criminal Procedure don't *require* the district court to examine the underlying evidence absent an objection. *See United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007).

wheelchair. That defendant would surely qualify for enhancements under both § 2G2.2(b)(4)(A) and § 3A1.1(b). *See, e.g.*, *United States v. Mullet*, 822 F.3d 842, 851 (6th Cir. 2016); *United States v. Walters*, 775 F.3d 778, 785–86 (6th Cir. 2015). The second defendant possesses the same video but *also* possesses a video of an adult sexually abusing a two-year-old. Under Nichols's reading, that defendant would *not* qualify for an enhancement under § 3A1.1(b) because "subsection (b)(4)(b) applies." So the first defendant receives a greater guidelines range for the less culpable conduct. That result would conflict with the express purpose of the sentencing guidelines to provide fairness in sentencing and to avoid "unwarranted sentencing disparities." 28 U.S.C. § 991(b)(1)(B); *see also* U.S.S.G. ch. 1, pt. A(1)(3), at 3 (explaining that "Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity"). And for whatever it's worth, it also would conflict with the stated intent of the Sentencing Commission to give offenses involving infants and toddlers "an enhancement." U.S.S.G. supp. to app. C, amend. 801, at 134. In the end, everything points to the same answer.

Finally, Nichols invokes the rule of lenity. But that canon applies only where there is a "grievous ambiguity or uncertainty." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (cleaned up). And there is nothing of the sort here.

We affirm.

_____

**DISSENT**

_____

CLAY, Circuit Judge, dissenting.   Defendant Lucas Nichols appeals his sentence for receipt and possession of child pornography.   Nichols contends that the district court erred in applying the "vulnerable victim" enhancement under U.S.S.G. § 3A1.1(b)(1) to increase his Guidelines sentencing range.   The majority finds no fault in the district court's decision to apply the enhancement.   However, because the district court did not perform fact-finding required by the plain text of the Guidelines, I respectfully dissent.

## I. Background

On April 12, 2018, Nichols pleaded guilty to receipt and possession of child pornography.   Investigators had collected 383 videos and 169 separate images from Defendant's cell phone, tablet, and Dropbox account.   Using the Guidelines rules for counting videos, this equaled 28,894 separate images in total.   *See* U.S.S.G. § 2G2.2 cmt. n.6(B)(ii).   Pursuant to the Presentence Report (PSR), the two counts against Defendant—one for receipt of child pornography and one for possession—were grouped together for the Guidelines calculation.   *See* U.S.S.G. § 3D1.2(d) (requiring grouping in cases where the offense level "is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm").   Offenses covered by § 2G2.2, such as Nichols' possession and receipt of child pornography offenses, are explicitly enumerated as "offenses . . . to be grouped under this subsection." *Id.* Thus, all of Nichols' conduct (*i.e.*, his uploading and downloading of the unlawful images and videos) was analyzed collectively for sentencing purposes.   The Guidelines further require the application of the offense guideline that produces the highest adjusted offense level for grouped offenses.   U.S.S.G. § 3D1.3(b).

One of the Guidelines for child pornography cases undoubtedly applies in this case.   But that guideline, U.S.S.G. § 2G2.2(b)(4), contains two subsections, only one of which can be used at a time.   One is the "sadistic and masochistic conduct" enhancement, which applies if the offense involves material that portrays "sadistic or masochistic conduct or other depictions of

violence." U.S.S.G. § 2G2.2(b)(4)(A). The other is the "infant and toddler" enhancement, which applies if the offense involved material depicting the "sexual abuse or exploitation of an infant or toddler." U.S.S.G. § 2G2.2(b)(4)(B). Both lead to the same four-level increase for Nichols' sentence.

But if both subsections lead to the same exact increase, why does it matter which one the district court applied? Importantly, if a sentencing court applies the "infant and toddler" enhancement, it cannot apply the two-level "vulnerable victim" enhancement, U.S.S.G. § 3A1.1(b), which applies if the defendant knew or should have known that the victim of their offense was a "vulnerable victim." *See* U.S.S.G. § 2G2.2(b)(4)(B), cmt. n.4 ("If subsection (b)(4)(B) applies, do not apply § 3A1.1(b).").[1]

In the present case, the district court applied the "sadistic and masochistic conduct" enhancement, which allowed it to also apply the "vulnerable victim" enhancement. The court referred to the PSR's findings in support of this decision. The PSR identified one video and one image possessed by Nichols as depicting sadistic and masochistic conduct. The PSR also found that because Nichols possessed three videos and one image depicting four-year-old females engaged in sexual acts, and two sexually explicit photos of toddlers, the "vulnerable victim" enhancement applied as well. The only basis for this appears to be the extreme youth of these victims, thus making them especially vulnerable, and the graphic nature of the images and videos.

The district court did not expressly reject the possibility that the "infant and toddler" enhancement could have applied instead of the "sadistic and masochistic conduct" enhancement, which would have foreclosed application of the "vulnerable victim" enhancement. Rather, the district court stated:

---

[1]This commentary note and the "infant and toddler" enhancement were added to the Guidelines via Amendment 801, in 2016. The Commission explained that expanding the "sadistic or masochistic enhancement" to include infant and toddler victims would "promote more consistent application of the child pornography guidelines and reduce unwarranted sentencing disparities" because "application of the vulnerable victim adjustment necessarily relies on a fact-specific inquiry." U.S.S.G. app. C, amend. 801 (2016) (Reason for Amendment). By reducing the number of cases in which the "vulnerable victim" enhancement could apply—because the new "infant and toddler" enhancement would apply instead—the Commission intended to limit the number of "fact-specific" inquiries by sentencing courts, thereby facilitating more consistent sentences.

In this situation where different enhancements are independently applied to different material possessed by the defendant, the application of each enhancement, the Court finds, is appropriate and the defendant's objection to the Presentence Report will be overruled, and the Court finds the defendant is subject to the two-level enhancement under Sentencing Guideline §2G2.2(b)(2) for material involving a prepubescent minor, the two-level Vulnerable Victim enhancement under Sentencing Guideline §3A1.1(b), and the four-level enhancement under Sentencing Guideline §2G2.2(b)(4)(A) for sadistic or masochistic conduct.

(R. 53, PageID # 345–346.)

The district court thus decided that even though Nichols possessed material involving infant or toddler victims, the "sadistic and masochistic conduct" enhancement could also apply, leaving the court free to also apply the "vulnerable victim" enhancement. The district court never said why the "sadistic and masochistic conduct" enhancement applied more than the "infant and toddler enhancement." Rather, it seems the district court reasoned that since there was at least one image depicting each type of conduct, it was free to choose the enhancement it preferred. This choice resulted in a Guidelines sentencing range of 262 months to 327 months. If the "vulnerable victim" enhancement had not been applied, then Defendant's Guidelines range would have been 210 to 262 months.

On appeal, Nichols does not challenge whether, assuming the "sadistic and masochistic conduct" enhancement applies, the district court could apply the "vulnerable victim" enhancement in a child pornography case solely based on the extreme youth of the victim. Both parties assumed this, and so the question is not before this Court.[2] Rather, Nichols challenges

---

[2]The Sentencing Commission explained that Amendment 801, which created the "infant and toddler" enhancement, resolved a circuit split as to whether a defendant who receives an age-based sentence enhancement because their victim is under the age of sixteen or twelve, § 2G2.2(b)(1)(A), (2), can also receive a "vulnerable victim" enhancement under § 3A1.1. U.S.S.G. app. C, amend. 801 (2016) (Reason for Amendment). The commentary to § 3A1.1 notes that while age can be the source of the vulnerability, if age is already incorporated into the offense guideline applicable to the defendant, then the "vulnerable victim" enhancement cannot be applied, "unless the victim was unusually vulnerable for reasons unrelated to age." § 3A1.1 cmt. n.2.

Circuits were split on whether "the victim's vulnerability is not fully incorporated into the offense guideline" by the age-based enhancement, and thus whether both enhancements could be applied in cases involving infant or toddler victims. *United States v. Jenkins*, 712 F.3d 209, 214 (5th Cir. 2013). Amendment 801 attempted to resolve this split by "explicitly accounting for infant and toddler victims in the child pornography guidelines." U.S.S.G. app. C, amend. 801 (2016) (Reason for Amendment). This Court has not yet addressed whether in light of this amendment, extreme youth can still support a "vulnerable victim" enhancement in a child-pornography case

whether the district court correctly applied the "sadistic and masochistic conduct" enhancement in the first place. As explained below, it did not, and the majority errs in affirming this decision instead of remanding for resentencing.

## II. The District Court's Procedural Error

For a district court's sentence to be affirmed, the court must have "'correctly calculate[ed] the applicable Guidelines range . . . .'" *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). If the range was miscalculated, then a procedural error was committed and the "district court necessarily abuse[d] its sentencing discretion," regardless of the actual sentence imposed. *Id.*

When two offense level enhancements are listed in the "alternative" (*i.e.*, within the same "specific offense characteristic subsection"), a sentencing court may only use the enhancement that "best describes the conduct" at issue. U.S.S.G. § 1B1.1 cmt. n.4(A), *see also Stinson v. United States*, 508 U.S. 36, 38 (1993) (holding that Guidelines commentary "that interprets or explains a guideline is authoritative, unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline"). The majority correctly notes that the "sadistic and masochistic conduct" and "infant and toddler" enhancements are listed in the "alternative." That means the district court should have identified which enhancement—the "sadistic and masochistic" conduct enhancement or the "infant and toddler" enhancement—"best describes" Nichols' conduct. Instead, the district court simply stated that Defendant possessed separate material that met each of the enhancements it applied. While it acknowledged that Defendant possessed material depicting infant and toddler victims, it used this fact to justify application of the "vulnerable victim" enhancement rather than first considering whether the "infant and toddler" enhancement "best describes" Nichols' conduct. U.S.S.G. § 1B1.1 cmt. n.4(A). In fact, the district court never considered whether and why the "sadistic and masochistic conduct" enhancement "best describes" Nichols' conduct relative to the "infant and toddler" enhancement.

---

where the "infant and toddler" enhancement is not applied but an age-based enhancement is. The majority's opinion does not address, let alone resolve this issue, and in fact this may simply be an unforeseen complication of Amendment 801.

The majority responds to this concern by claiming that both enhancements equally apply to Nichols' conduct, and when multiple enhancements apply equally, a sentencing court is to use only the enhancement that results in the greatest offense level. While this is true—when two enhancements are, in fact, "equally applicable,"—neither the majority nor the district court explained why both enhancements at issue in the present case are "equally applicable." U.S.S.G. § 1B1.1 cmt. n.5. The district court simply observed that Nichols possessed at least one image that satisfied each enhancement.

Under such a conception of "equally applicable," a district court would never need to determine which enhancement "best describes" a defendant's conduct, reading this provision out of the Guidelines. So long as some of the defendant's conduct satisfies each enhancement, then the enhancements are equally applicable and the court is free to select whichever yields the higher Guidelines range.[3] Ultimately, the majority may be concerned that Nichols may receive a lower sentencing range than a less-culpable defendant whose conduct does not invoke the "infant and toddler" enhancement.[4] While this is a fair concern, this Court is bound by the plain text of the Guidelines.

Moreover, the majority's concern can be addressed without misinterpreting the Guidelines. If a sentencing court does not believe that the properly calculated Guidelines range adequately captures a defendant's culpability, it may depart from the Guidelines, subject to our case law governing procedural and substantive reasonableness. *See e.g.*, *Bolds*, 511 F.3d at 578–81; *Gall v. United States*, 552 U.S. 38, 51 (2007). Rather than rely on this mechanism to ensure

---

[3]The majority correctly points out that § 1B1.1 cmt. n.5 states that if a defendant both discharges and brandishes a firearm during a crime, the discharge enhancement is to be applied as it results in a greater offense level. This example is drawn from § 2A2.2(b)(2), where the discharge and brandishing enhancements are listed in the alternative. However, those are *two* discrete acts. The "infant and toddler" and "sadistic and masochistic conduct" enhancements, by contrast, require an inquiry into the "material" involved in the offense. U.S.S.G. § 2G2.1(b)(4). It is far from clear in the present case, given the *thousands* of images in Nichols' possession and lack of clarity on their content in the record below, whether the enhancements "appear equally applicable." U.S.S.G. § 1B1.1 cmt. n.5.

[4]A defendant who has images that trigger the "sadistic and masochistic conduct" enhancement and the "vulnerable victim" enhancement would receive a six-level increase while a defendant whose conduct is "best described" by the "infant and toddler" enhancement would only receive a four-level increase. For example, if a defendant possessed the same images as Nichols, excepting those involving infants and toddlers (but still some depicting sadistic and masochistic conduct), that defendant is arguably less-culpable, yet would receive a higher Guidelines range.

an appropriate sentence in this case, the majority glosses over the requirements of the Guidelines—that the sentencing court identify which enhancement "best describes" the defendant's conduct or if each equally applies—to affirm Defendant's sentence.[5]

In this case, the district court did not make sufficient findings to conclude that each enhancement is "equally applicable." There was no survey of Defendant's 28,894 images nor any analysis of whether the images more closely conform to the "sadistic and masochistic" conduct enhancement or the "infant and toddler" enhancement. Instead, the district court accepted the PSR's examination of no more than four videos and four images in applying the "sadistic and masochistic" conduct enhancement and "vulnerable victim" enhancement. Such a cursory analysis of the images and videos cannot decide which enhancement "best describes" Defendant's conduct or whether both are "equally applicable." Without factual findings from the district court as to these unknown and controverted facts, the requirements of § 1B1.1 cmt. n.4(A) remain unfulfilled. *See United States v. Howell*, 513 F. App'x 533, 535–36 (6th Cir. 2013) (affirming the defendant's sentence after district court made specific findings of fact regarding whether the defendant looked at child pornography, an issue contested at sentencing).

In *United States v. Brown* ("*Brown I*"), 327 F. App'x 526, 534–35 (6th Cir. 2006) (per curiam), this Court remanded a sentencing decision regarding child pornography because the district judge did not review any of the photographs prior to applying § 2G2.1(d)(1), an enhancement applied when a defendant's conduct involves multiple exploited minors. The district court, upon remand, examined the photographs and videos in defendant's possession and reaffirmed its earlier Guidelines calculations. *Id.* at 534–35. This resentencing—supported by clear findings of fact by the trial judge—was affirmed on appeal. *United States v. Brown* ("*Brown II*"), 579 F.3d 672 (6th Cir. 2009). While that appeal centered on whether the material

---

[5]The majority cites *United States v. Cole*, 359 F.3d 420, 426 (6th Cir. 2004) in support of its conclusion that the enhancements "appear equally applicable" in this case. But *Cole* involved the application of enhancements listed under separate Guidelines sections and thus they were not subject to the requirements of § 1B1.1 cmt. n. 4(a) directing sentencing courts to determine which provision "best describes" the conduct in question. The majority also cites out-of-circuit precedent, *United States v. Talladino*, 38 F.3d 1255 (1st Cir. 1994), for the proposition that "[w]hen the same set of facts implicates two different adjustment provisions, . . . the guidelines ordinarily do not require a sentencing court to embrace the lesser of the two equally applicable adjustments." *Id.* at 1262. However, *Talladino* neither provides a definition of "equally applicable," nor did it involve two alternative Guidelines provisions that are subject to the requirements of § 1B1.1 cmt. n. 4(a) either.

possessed by the defendant was "lascivious," we approvingly discussed the district court's thorough examination of the photos and videos upon remand. *Id.* at 678–80.

A similar result should be obtained in the present case. Like the court in *Brown I*, the district court in Nichols' case did not properly examine the unlawful images. The record below does not indicate that the court looked at the images, considered which enhancement best described them or whether they equally applied, and sentenced Nichols accordingly. Instead, the district court relied on the PSR's scant examination of Nichols' collection in deciding to apply the "sadistic and masochistic conduct" enhancement. Like the defendant in *Brown I*, Nichols "is entitled to a remand to allow the government to submit (and the court to fully consider) all evidence regarding" the applicability of the two enhancements to Defendant's conduct. *Brown I*, 327 F. App'x at 535.

Moreover, the fact that the Guidelines expressly prohibit the application of the "infant and toddler" enhancement" together with the "vulnerable victim" enhancement distinguishes this case from *United States v. Sweet*, 776 F.3d 447, 451 (6th Cir. 2015) (holding that there was no "double counting" where two enhancements applied to the same conduct because each enhancement "punished different aspects of the conduct"). The enhancements at issue in *Sweet* were not mutually exclusive, unlike the two at issue in the present case. Thus, by directing sentencing courts to determine which of the two enhancements "best describes" a defendant's conduct, the Guidelines prevent a kind of double counting that would occur if a sentencing court strategically applied the "sadistic and masochistic conduct" enhancement rather than the "infant and toddler enhancement," to avoid the prohibition on applying the "vulnerable victim" enhancement.

Finally, the Defendant raises the rule of lenity in support of his position. I agree with the majority that application of the rule is unnecessary because the text of the Guidelines is clear: the district court erred by not determining which of the enhancements "best describes" Defendant's conduct. Nevertheless, the rule further supports Defendant's position if there were ambiguity in the district court's obligation to decide which enhancement "best describes" Defendant's conduct. *See United States v. Henry*, 819 F.3d 856, 872 (6th Cir. 2016) (holding that when the Rule of Lenity applies to a Guidelines case, "[e]ven if one could conclude that

there were two rational readings of [a] Guideline[s provision], this Court would be bound to choose the less harsh reading"). In the present case, the less "harsh reading" of § 2G2.2(b)(4) is the one that requires the district court to explain why the enhancement it is applying "best describes" Nichols' conduct.

In the present case, Nichols is entitled to a resentencing hearing at which the district court can revisit its application of the enhancements at issue and make the necessary findings to justify it. In rejecting this conclusion, the majority ignores the plain text of the Guidelines and effectively negates the requirement that district courts decide which enhancement "best describes" a defendant's conduct. While this reading may produce more consistently lengthy explanations for sentences, "when [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000). And the majority's policy concern is misplaced, since district courts can already depart from the Guidelines under *United States v. Booker*, 543 U.S. 220, 259–60 (2005).

For all the foregoing reasons, I respectfully dissent.