# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 16, 2024

Lyle W. Cayce
Clerk

No. 23-10695

United States of America,

*Plaintiff—Appellee*,

*versus*

David Earl Boyd,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:22-CR-271-1

Before Haynes, Willett, and Oldham, *Circuit Judges*.

Per Curiam:[*]

A jury convicted David Earl Boyd of child sex exploitation and possession of child pornography. The district court gave Boyd two life sentences. He now challenges his sentence on the grounds that the three-year-old he abused was not a "toddler" but a "preschooler." We affirm.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-10695

## I.

Boyd violently abused his own three-year-old and six-year-old grandchildren to make sadistic pornographic images while he was babysitting them. Boyd was caught when his son turned him into the FBI. In addition to the pornography he produced using his own grandchildren, Boyd also possessed 11,000 images of child pornography on his cell phone. Of those images, "326 images depict[ed] infants or toddlers, 175 images depict[ed] sadistic or masochistic conduct, and 26 images depict[ed] bestiality involving minors." ROA.978.

At the time he committed these felonies, Boyd was already a registered sex offender. A federal grand jury indicted him on two counts of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a), one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), and one count of penalties for registered sex offenders in violation of 18 U.S.C. § 2260A. A jury convicted him on all counts. Boyd's guilt is uncontested in this appeal.

Prior to sentencing, Boyd's presentencing report recommended that he receive a four-level enhancement under U.S.S.G. § 2G2.1(b)(4)(B) for producing sexually explicit material that depicted an "infant or toddler." Boyd objected to the enhancement on the ground that some regulatory and medical authorities define "toddler" to be a person who is 36 months old or younger. When Boyd sadistically abused his youngest grandchild, he argues, the child was older than 36 months and hence not a "toddler."

The district court overruled his objection and sentenced Boyd to life imprisonment on both counts of child sex exploitation and 240 months on the child pornography count (all of which ran concurrently). Then the district court imposed an additional 120-month sentence on the § 2260A count (to run consecutively). The district court explained:

You asked for mercy and leniency. I think I've done that, but I showed the leniency and the mercy to the appropriate party, which is the people of the United States and to the victims that you have in a trail behind you. I think you richly deserve this life sentence that I have just imposed or just stated.

ROA.727.

Boyd timely appealed.

## II.

The question presented for decision[1] is whether the district court erred in applying a four-level offense-level increase because Boyd's three-year-old granddaughter was a "toddler" under U.S.S.G. § 2G2.1(b)(4)(B). Because Boyd timely objected, we review de novo the sentencing court's application of the Guidelines and its factual conclusions for clear error. *See United States v. Barfield*, 941 F.3d 757, 761 (5th Cir. 2019).

## A.

Beginning with the text, § 2G2.1(b)(4)(B) provides for an enhancement if the offense involves material depicting "an infant or toddler." The Guidelines do not define the term "toddler." In such a situation, we look to the term's "ordinary meaning." *United States v. Buendia*, 73 F.4th 336, 339 (5th Cir. 2023) (quotation and citation omitted).

Dictionaries coalesce around the general meaning of the term "toddler." A toddler is "one who toddles, *esp.* a young child." WEBSTER'S NEW INTERNATIONAL DICTIONARY 2695 (2d ed. 1934; 1950).

---

[1] Boyd raises two additional arguments that he recognizes are foreclosed, so we need not address them here. *See* Blue Br. at 2. He merely wishes to preserve those objections for possible further review. *Id*. at 2 n.1.

Similarly, the American Heritage Dictionary defines "toddler" as "[o]ne who toddles, especially a young child learning to walk." *Toddler*, American Heritage Dictionary, https://perma.cc/CF29-R5FF (last visited Jun. 19, 2024). Which is in accord with the Oxford English Dictionary definition of "toddler" as "[a] person who toddles (in various senses)" and "[a] young child; (now) *spec.* a child who is learning to walk." *Toddler*, Oxford English Dictionary, https://perma.cc/V8JG-ZFUN (last visited Jun. 19, 2024). None of these sources imposes a bright-line cutoff for aging out of "toddler" status.

When the Sentencing Commission wanted to impose a bright-line cutoff, it knew how to do so. For example, in a different subsection of § 2G2.1(b), the Commission provided offense-level increases when "the offense involved a minor who had (A) not attained the *age of twelve years* . . . or (B) attained the *age of twelve years* but not attained the *age of sixteen years*." U.S.S.G. § 2G2.1(b)(1) (emphasis added).[2] Such bright-line cutoffs are conspicuously absent from § 2G2.1(b)(4).

And we do not need to guess why. In its "Reason for Amendment," the Sentencing Commission explained that it added "infant or toddler" to resolve a circuit split regarding "whether the 'vulnerable victim'

---

[2] Chapter 2, part G of the Guidelines (covering in pertinent part "sexual exploitation of minors, and obscenity") is replete with other examples of bright-line cutoffs. For example, § 2G3.2 covers "obscene telephone communications for a commercial purpose" and "broadcasting obscene material." *Ibid.* The Guidelines impose an offense-level increase "[i]f a person who received the telephonic communication was less than eighteen years of age, or if a broadcast was made between six o'clock in the morning and eleven o'clock at night." § 2G3.2(b)(1). And § 2G3.1 covers "importing, mailing, or transporting obscene matter" and "transferring obscene matter to a minor." *Ibid.* In the case where those offenses result in a "pecuniary gain," the district court must increase the offense level using bright-line cutoffs from U.S.S.G. § 2B1.1, which covers "Theft, Property Destruction, and Fraud" offenses. *See* § 2G3.1(b)(1)(A).

enhancement in § 3A1.1(b) applied to victims who were vulnerable only because they were very young (*i.e.*, infants or toddlers)." *United States v. Nichols*, 943 F.3d 773, 774 (6th Cir. 2019) (citing U.S.S.G. § 2G2.1, amend. 801, effective Nov. 1, 2016). And § 3A1.1(b), like § 2G2.1(b)(4)(B), provides no bright-line cutoffs for vulnerability. In fact, the Commission's Reason for Amendment cited several cases involving victims who were far older than 36 months. *See, e.g.*, U.S.S.G. § 2G2.1, amend. 801, effective Nov. 1, 2016 (citing, *inter alia*, *United States v. Burgess*, 684 F.3d 445, 454 (4th Cir. 2012), which involved a five-year-old victim).

Our precedent reinforces this conclusion. In *United States v. Jenkins*, 712 F.3d 209 (5th Cir. 2013), we held the "vulnerable victim" enhancement for infants and toddlers has no bright-line age cutoff. *See id.* at 214. And we relied favorably on the Ninth Circuit's decision in *United States v. Wright*, 373 F.3d 935 (9th Cir. 2004), which held: "[T]he traits and characteristics associated with infancy and the toddler stage can exist independently of age, and . . . the factors of extreme youth and small physical size recognize a vulnerability beyond 'age' per se . . . . " *Id.* at 943; *see Jenkins*, 712 F.3d at 213 (relying on *Wright*).

The district court did not err in applying § 2G2.1(b)(4)'s toddler enhancement here. Boyd's three-year-old granddaughter plainly had the traits and characteristics associated with a toddler, including extreme youth and small physical size. She still wore diapers. Boyd was babysitting the child when he sadistically abused her. And we have no basis in the text of the Guidelines or our precedent for imposing a bright-line 36-month cutoff for § 2G2.1(b)(4).

## B.

For his part, Boyd agrees that the ordinary meaning of "toddler" is "a person who toddles, especially a young child learning to walk." Blue Br. at 10

(citation omitted). But he contends that definition is too vague and that it is the province of our court to clarify it. *Ibid.* He urges us to hold that "toddlerhood" terminates at exactly "the age of 36 months." *Id.* at 8.

To support that argument, Boyd points to the Social Security Administration's regulations for disability benefits, noting that 20 C.F.R. § 416.926a(g)(2)(ii) and (iii) define "[o]lder infants and toddlers" as "age 1 to attainment of age 3" and "[p]reschool children" as "age 3 to attainment of age 6." He also argues that elsewhere in the disability benefits context, such as the Individuals with Disabilities Education Act ("IDEA"), the term "at-risk infant or toddler" refers to an individual under 3 years of age. *See* 20 U.S.C. § 1432(1). He also contends that some medical definitions cut off "toddler" at 36 months. Blue Br. at 10–11.

This is entirely irrelevant. The Social Security Administration's approach to disability benefits says nothing whatsoever about the Sentencing Commission's approach to the production of child pornography. IDEA is likewise irrelevant at best. All of Boyd's authorities merely show that if either Congress or the Commission wanted to impose a bright-line cutoff for the definition of a toddler in the criminal-sentencing context, both institutions knew how to do it. In the absence of such a cutoff, our court is powerless to rewrite § 2G2.1(b)(4) to impose one. *See, e.g.*, *Univ. of Tex. M.D. Anderson Cancer Ctr. v. HHS*, 985 F.3d 472, 476–79 (5th Cir. 2021).

AFFIRMED.